UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

    Plaintiff,                                         Case No. 17-20087
                                                       Honorable Victoria A. Roberts

v.

KALVIN CANDLER

    Defendant.
_____/

**<u>ORDER OVERRULING PLAINTIFF'S OBJECTIONS [Doc. 30]; ADOPTING THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [Doc. 28]
AND DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [Doc. 18]</u>**

## I. INTRODUCTION

Kalvin Candler ("Candler") filed a Motion to Suppress Statements that he says were involuntarily elicited from him in violation of *Miranda* and the Fifth Amendment. Magistrate Judge Steven Whalen issued a Report and Recommendation ("R&"R) recommending that Candler's Motion be DENIED. Candler timely objected; these objections are fully briefed.

For the following reasons, the Court **OVERRULES** Candler's objections, **ADOPTS** Magistrate Judge Whalen's R&R and **DENIES** Defendant's Motion to Suppress Statements.

## II. FACTS

Detroit Police officers stopped Candler at a BP Gas Station for expired tabs. They then arrested him for carrying a concealed weapon without a permit and for being a felon in possession of a firearm. He was taken to the Detroit Detention Center ("DDC"). At the DDC, Candler informed the staff he was epileptic and needed medication to prevent seizures.

The next morning, a Michigan Department of Correction ("MDOC") officer took Candler from his cell to meet Officers Dyer and Lawton at the Control Desk of Building 500 at the DDC.

1

Dyer and Lawton then transported Candler a short distance to an interrogation room. During this walk, Dyer asked Candler if he knew why he was arrested. Candler replied that it was because he had a gun. Candler was not advised of his constitutional rights at this time.

Later, Dyer provided Candler a form containing *Miranda* rights. Dyer thoroughly advised Candler of his rights, ensuring he understood each right by having him initial them.

After advising Candler of his rights, Dyer asked Candler a series of questions regarding the gun and to whom it belonged. Dyer wrote the information on a form. Candler reviewed it for mistakes upon conclusion of the interrogation.

## III. DISCUSSION

Under Fed. R. Civ. P. 72(b)(3), a district judge is required to determine *de novo* any part of the magistrate judge's report and recommendation that has been properly objected to. *See also* 28 U.S.C. § 636(b)(1)(C); *Cole v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 738, 741 (E.D. Mich. 2015). *De novo* review requires the Court to re-examine all relevant evidence previously reviewed by the magistrate judge to determine whether the recommendations should be accepted, rejected, or modified. *Cole v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 738, 741 (E.D. Mich. 2015); 28 U.S.C. § 636(b)(1). Only those objections that are specific are entitled to *de novo* review. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

Candler sets forth two specific objections to the R&R.

**Objection #1**: **Candler says the Magistrate Judge erred in finding that the *Seibert* factors weighed in favor of admitting his Mirandized statement.**

The Magistrate Judge concluded that Candler's pre-*Mirandized* statement made to Dyer in response to Dyer's question during the walk from the Control Desk to the interrogation room was inadmissible in the absence of *Miranda* warnings.

At the interrogation room, Dyer did advise Candler of his *Miranda* rights. Candler argues

2

that his pre-*Mirandized* statement made en route to the interrogation room tainted the *Mirandized* statement made during the recorded interrogation.

Magistrate Judge Whalen relied on the applicable five-factor test from *Missouri v. Siebert*, 542 U.S. 600, 612 (2004) to assess the statements made during the recorded interrogation. He concluded that Dyer's pre-*Mirandized* question did not diminish the effectiveness of the *Miranda* warnings prior to the recorded interrogation, and did not warrant suppression of Candler's interrogation statements.

The first *Siebert* factor focuses on the completeness and detail of the first interrogation. Dyer posed a single question to Candler en route to the interrogation room – asking if he knew why he was arrested. Magistrate Judge Whalen concluded this questioning was not extensive, focused, or detailed. This decision is well reasoned and supported by the cited authority, including *United States v. Ashmore*, 609 Fed.App'x 306 (6th Circ. 2015) and *United States v. Ray* __Fed.App'x__,2017 WL 2471245 (6th Circ. 2017) (*Ray II*, following remand). In *Ashmore* and *Ray II*, the officers engaged in very focused and specific questioning regarding the offense. *Ashmore* 609 Fed.App'x at 311-312; *Ray II* 2017 WL 241245 at 5. Magistrate Judge Whalen appropriately distinguished Candler's case, and the Court finds that Dyer's single question did not rise to the level of specificity demonstrated in *Ashmore* and *Ray II* and does not weigh in favor of suppression.

The second and fifth *Siebert* factors focus on the overlapping content of pre- and post-*Miranda* statements and the degree of continuity between them. Again, Magistrate Judge Whalen appropriately distinguished Candler's case from *Ashmore* and *Ray II*.

In *Ashmore*, the court found that the second and fifth factors were satisfied because the questions following the initial questioning and were materially the same. *Ashmore* 609

3

Fed.App'x at 317. In *Ray II*, the court found that the second factor was satisfied because during the recorded interview, the officers asked questions based on the information they gained from the pre-*Mirandized* questioning. *Ray II* 2017 WL 241245 at 5. The fifth factor was satisfied when the officers asked the accused a series of questions that were derivative of the earlier pre-*Mirandized* statements. *Id* at 8.

Dyer did not follow up on Candler's pre-*Mirandized* initial statement. During the walk to the interview room, Dyer only asked Candler if he knew why he had been arrested.

During the recorded interrogation, Dyer asked Candler a series of questions related to the gun and his arrest. There was no "targeted questioning" derived from Candler's pre-*Miranda* statement. Although both statements related to the gun, Dyer did not follow up on the statement Candler made en route to the interrogation room. Also, as Magistrate Judge Whalen correctly determined, there was not a considerable overlap or continuity between the statements that would suggest the need to suppress the recorded statement.

The third *Siebert* factor focuses on the timing and sequence of the interrogations. Very short time spans between pre- and post-*Miranda* statements will receive greater scrutiny. Magistrate Judge Whalen distinguished Candler's case from *Pacheco-Lopez*, where the interrogation was continuous and the break between the statements only lasted the time it took to read the *Miranda* warnings. *United States v. Pacheco-Lopez*, 531 F.3d 420, 420 (6th Circ. 2008).

Magistrate Judge Whalen estimated that approximately 40 minutes elapsed between the time Candler signed the *Miranda* form and when the recorded interrogation began. Dyer carefully advised Candler of his *Miranda* rights; and asked if he understood each of them. The initial pre-*Mirandized* statement occurred en route to the interrogation room; the *Mirandized* statement was made in the interrogation room. There was a change in both time and setting

4

between the two statements. Based on this, Magistrate Judge Whalen correctly held that it cannot be reasonably said that the questioning was part of the same sequence.

**Objection #2: Candler argues that the Magistrate Judge failed to consider his conversation with the MDOC officer concerning his need for medication and the role it played in coercing his recorded statement.**

At the evidentiary hearing, Candler testified about events that took place at the DDC before Dyer and Lawton interrogated him. Candler testified that upon arrival at the DDC he informed staff that he suffered from epilepsy and needed medication (Tr. 37).[1] Additionally, Candler said that the morning after his arrest, an MDOC officer took him to the Control Desk to meet Dyer and Lawton (Tr. 43). Candler testified that he asked the MDOC officer if he could see medical staff regarding his medication. The MDOC officer told Candler that he could get medical attention after he spoke to Dyer and Lawton (Tr. 43). Candler argues that he did not voluntarily agree to speak with Dyer and Lawton; he was being compliant because he thought he could get medical attention following the interrogation (Tr. 45).

Candler argues that this testimony was credible and not considered by Magistrate Judge Whalen. Candler argues that the Court should now conduct an evidentiary hearing to fully assess his credibility, and then consider it together with the events that transpired during the recorded interrogation with Dyer and Lawton.

While it is true that Magistrate Judge Whalen did not discuss this portion of Candler's testimony in the R&R, he was not required to do so. He correctly stated the three requirements that must be satisfied before a finding of involuntary confession based on police coercion can be made: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement.

---

[1] "Tr." refers to transcript of June 5, 2017 evidentiary hearing.

Magistrate Judge Whalen thoroughly assessed the interrogation recording to determine if the confession was involuntary and if there were signs of coercion. He stated that the recording did not support Candler asking the officers for medication, the officers threatening him or making any promises to him. Furthermore, the recording shows Candler stating he did not feel threatened. Lawton asked him about his condition. Candler indicated that the MDOC was checking on his medication. Additionally, Candler stated that he was previously *Mirandized* for another arrest and was familiar with the process.

Magistrate Judge Whalen concluded that neither the process of the interrogation nor Candler's subjective concerns indicated objectively coercive police activity. Even though Candler missed two doses of his epilepsy medication by the time the interrogation took place, the recording supports that he was alert, responsive and engaged in coherent conversation with the officers. The interrogation room recording does not support that Candler was being "compliant" only because he thought he would otherwise not receive medication.

After a *de novo* review of the relevant evidence, the Court finds that Magistrate Judge Whalen correctly determined that Candler waived *Miranda* rights and voluntarily confessed. Considering the record as a whole, Magistrate Judge Whalen's conclusions are well supported.

## IV.  CONCLUSION

The Court **OVERRULES** Candler's objections, **ADOPTS** Magistrate Judge Whalen's R&R and **DENIES** Defendant's Motion to Suppress Statements.

**IT IS ORDERED.**

                                                 /s/ Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated:  10/30/17